Mr. Pomponio, whenever you are ready. May it please the Court, I'm Brent Pomponio and I'm here on behalf of the appellant Charlotte McCauley. This appeal concerns whether a federal savings bank or association can commit fraud, lie to its customers, and leave the borrower with no recourse at all. The district below dismissed Ms. McCauley's state law claims, concluding that they were preempted by the Home Owners Loan Act. I thought this case was about preemption. It is about preemption. All those things could still happen, but if it's preempted, that's a whole different issue. I mean, you could lie, do all those things, but preemption is not out to do that. That's a whole different ballgame. I'm not trying to throw you off on it, but you really kind of threw me off on it, because that's a whole different question. That's the trial. Well, in this case, if you're taking the allegation as a complaint to be true, it's alleged that the Oceans Bank lied to Ms. McCauley to induce her into a mortgage loan that trapped her in that loan without her knowledge, and if the preemption is expanded on the scope that's advocated by the bank here and the district court below, there's no recourse for that situation for Ms. McCauley. That's exactly a correct characterization of a complaint. There are two counts, right? Yes, ma'am. There is a count that the contract was unconscionable. Correct. Correct. And then there's the fraud count. Yes, ma'am. Correct. And the district court found, in favor of Home Loan Investment Bank, the appellee on both counts. The district court found that both counts were preempted. Preempted. I'm sorry. So they're very different counts, aren't they? They're not. In terms of the preemption argument. I don't believe that they're very different at all. I would say that the common law fraud claim is probably the most expansive concept of preemption as I have seen applied. There's been no circuit court, federal circuit court in this country, that has preempted a common law claim, certainly not for fraud. And the fact that Home Loan Investment did not even move to dismiss the fraud claim on preemption grounds sort of indicates that the district court was really out there on expanding this preemption analysis. What are the elements of the unconscionability claim? Well, under state law, and I provided a supplemental authority letter pursuant to Rule 28J because the Supreme Court of Appeals of West Virginia recently, after briefing was closed, entered an opinion at length discussing what goes into a conscionability analysis. And what it requires is a showing that there is an unequal bargaining position. No, what I'm asking you is why do you contend that the loan is unconscionable? Oh, well, the gravamen of the claim is that she was deceived to believe that her home was a greater value than it was, and so she was – So the loan-to-value ratio. It's not the loan-to-value ratio. It's the amount of her home value. Not the relation to the – the claim doesn't say that – But it only matters because it's undervalued to the loan. I mean, that's what leads to the bankruptcy, isn't it? It has to be comparative. Well, it matters – it's a damage to her. There are damages to her that the loan is more than the value of her property. That's correct, but the claim is that she was deceived into believing that this home was worth what the loan was being – Okay, and what I'm trying to do, because it seems to me that the elements of the unconscionability claim and the fraud, they're different claims. Because this is an interesting regulation. It's a very pro-preemption regulation. In most cases, there is a presumption against preemption, but here the presumptions run the other way. There are presumptions in favor of preemption. Yes, ma'am, but the first place the Supreme Court says that you go to to determine whether there's preemption is whether the agency believes that the state law would be preempted. Let's assume that the judge got it wrong on the preemption argument. As to unconscionability, under West Virginia law, you've got to prove both procedural and substantive unconscionability. Yes, Your Honor. Is there evidence of the substantive unconscionability in this case? Yes, Your Honor. It's the fact that she was deceived to believe that her home was worth enough to cover the value of the loan. And because it is not, she's trapped in a loan where there's an interest rate that can increase, can never decrease, go beyond her ability to pay. She may never refinance it because she is trapped into that loan. She may never sell the property. How is that different from a loan-to-value ratio? Well, a state law that regulated a loan-to-value ratio would be one that said that a savings association may not extend credit above the value of the property. And, in fact, West Virginia has statutory regulations regarding that. Those statutory regulations would be preempted. Substantive unconscionability deals with the existence of unfair terms in the contract. Where are the unfair terms? The amount of the loan that is over the value of the property that goes up, the rate that may go up and trap her in an increasing amount that does not. Now, I understand your question about that has to do with the fact that there's a ratio of a loan-to-value in that. But the fraud claim and the unconscionability claim do not seek to prohibit banks from lending money above the amount of a loan. That's where I think my colleague is going. It seems, and I think we need to cut to the chase on this particular unconscionability. It really seems like it's very strong that this thing is preempted, at least as a loan-to-value, credit terms. The fraud one, as you've alluded to, in my opinion, that's what you really ought to be hitting on. But that's just my opinion, and I don't know what my colleagues feel about it, how you feel about it. And I understand. I think I understand your argument on the unconscionability. I'm not saying it's already foreclosed and it won't be considered, but I would think that fraud one is the one that seems to be the one you really are going at. Because even in your argument on unconscionability, that's kind of what you're talking about, a fraud. Your Honor, I appreciate the opportunity to address that. I do agree that the fraud is stronger, but I believe that the unconscionability is likewise not preempted. The OTS itself has said that state laws, general prohibitions on deception. Well, but that goes back, I think, to the excellent advice my colleague was trying to give you. The regulation clearly, specifically covers the regulation, state laws regulating loan-to-value ratios, terms of credit, interest rates, disclosures, processing. What you've got, I think as well, are that the state laws, state contract and tort laws, are not preempted to the extent that they only incidentally affect. And it's that fraud component that seems to underlie, seems to be the common theme that you go back to, even when we're talking about unconscionability. Well, the concept of unconscionability is such that when there's unequal bargaining position and there are unfair terms that are so one-sided as to disfavor the weaker party. But terms of credit are specifically preempted. Yes, ma'am. That's specific in the regulation. That's correct, and the unconscionability claim does not seek to regulate terms of credit. It only seeks to, under a court of equity, to not enforce contract that is so unconscionable that, as it's said by Wilson, no reasonable person would agree to it and no honest person would accept it. And it's a totality of circumstance. I'm sorry. I just don't understand how you can make that argument in light of the express preemption in the statute or actually, for that matter, why you would want to when you've got the state tort claims that seem to me to be lower-hanging fruit. Well, the unconscionability claim is a different standard and provides for different remedies, but they are both contract avoidance principles, and they are both elements of contract law upon which a court could refuse to enforce an agreement. If they're not preempted, right. Yes, ma'am. And they're generally applicable principles that do not discriminate against lenders, do not discriminate against savings associations, and the fact that they do not seek to regulate any terms. All they seek to do is ensure that a lender deals with his customer fairly. Well, how else would that be manifested other than the terms? That's the exact reason why the standards that were employed by the district court, that they're inextricably linked, are too broad. And as the district court said, and that was also part of the supplemental authority that I brought in the District of Columbia, just about any contract claim or any tort claim that is brought will be related, often inextricably, to the loan terms. Let's assume that on the fraud claim he got preemption wrong. Justifiable reliance is one of the elements of a fraud claim. The bank never disclosed to your client the appraisal or did it have any obligation to do so. So they didn't make any representation that she relied on in borrowing that money. Your Honor, the district court actually made the finding that the complaint alleged that they represented the value of the property, misrepresented the value of the property, and that's what's alleged. It's alleged that they intentionally employed an appraiser to give an inflated value, and then they came back and told Ms. McCauley, your home is worth more than $51,000 based on this fraudulent appraisal that they had obtained. And the law under West Virginia is such that if you make a false representation of somebody, whether you know that it's true or not, it's the basis for fraud. All the claims for the underlying fraud claim were pled. And with respect to this distinction between the unconscionability claim and the fraud claim, I think it's simply an important point that just because she has the fraud claim, that doesn't mean that the unconscionability claim is preempted. That's not the problem. The problem is the express language of the regulation. It's not the linkage. Well, the unconscionability claim does not expressly seek to regulate any of the enumerated Part B questions. It is a concept under West Virginia law where you look at the totality of the circumstances. And the reason for it is because if there is unreasonable terms favoring a weaker party, it suggests, according to West Virginia law and general concepts of unconscionability around the country, that there are elements of duress. Yes, and you've gone right back to terms, which is the problem. Do you really not want to talk about fraud? Well, I feel like that Your Honor agrees that the fraud claims might not have been preempted. And so I want to preserve the right, the state common law right of unconscionability. And the terms generally speaking, it's not preempted because your claim refers to it. The assumption you're making is that we're saying that the fraud claim is not preempted. I wouldn't make that assumption in the sight of you. I think you've got to make that argument. I'm trying to pick my battles, and it seems to me. I'm pretty sure the other side is going to come pretty hard saying it is preempted. Well, they didn't move for it to be dismissed on preemption grounds below. So I don't know how hard they're going to come with that. But when somebody makes an affirmative misrepresentation, a bank lies and says, ma'am, we're giving you a loan for $51,000, and the reason is because your house is worth more than that. Would you like to agree to that loan? And she says yes, and that's not true. That's fraud. Now, it refers to a term of the loan, true, but that's not the standard. The standard is whether the state law seeks to regulate, whether it stands as an obstacle to the regulation of federal thrifts and savings associations. When you really get down to it, it does meet the elements in terms of when someone makes a misrepresentation as to the value of a home and you get a bigger loan for it, a lot of people are kind of like that. What that did was allow them to get money for which they then could have tax benefits in a whole different venue at a lower interest rate. So while on the one hand, the negative part about it is when you get someone who can't pay and they end up owing this great amount of money, a financially prudent person would consider it to be, oh, this is a really nice thing. And the fraud may be on the government or it may be on someone else as opposed to the individual. Well, Your Honor, that's not the facts in this case. She was not getting a lower payment. She was put into this loan without her knowledge that being over the value of the property where it has an interest rate that starts at 9.49 and may go up to over 15% and can go up but can never go down. So there's no evidence in this case. Getting back into the terms now when we're dealing with it in terms of you've got an interest rate here and she's upset because she got this higher interest rate and she wished she had gotten a lower one so it's the harm that's the problem. Is that your focus on the fraud? No, Your Honor, that's the explanation of what damage it is to her because Your Honor was suggesting that there may be no damage to somebody that they would want to have a loan of this amount. And I'm explaining to you how that's not beneficial to her. It is not part of the preemption analysis that you may never speak of any loan terms because that's what the fraud is about, is about a loan and the way it was originated and its terms. The question is whether by allowing a successful fraud claim, does that regulate a bank, a thrift inconsistent with the regulations. And in what way does it not is the question. It does not because the OTS has said specifically that general laws of application that only seek to make the banks or savings associations deal honestly with their customers are not preempted. The OTS has spoken directly to this. This is not a case where the OTS has said that it is preempted. The OTS has said to the contrary that these types of laws and no Federal Circuit Court of Appeals nor the Supreme Court have said common law claims of general application are preempted. Thank you very much. Mr. Rogers? Good afternoon. Let me first just give a brief overview of Home Loan and Deutsche Bank's position with regard to all of the issues that have been presented on appeal. As this court has noted in her complaint, Ms. McCauley makes only two claims, an unconscionable claim and a fraud claim. And the court found, the district court found properly, that those claims were both preempted under HOLA and dismissed those claims. The district court didn't go any further than that. But even if those claims were not preempted under HOLA, they'd be dismissed for failure to state a claim on which relief could be granted or, with regard to the fraud claim, for failure to plead the claim with the particularity required by Rule 9b. As the Deutsche Bank and the claims against Deutsche Bank, Ms. McCauley has admitted in her allegations that these claims are only asserted against Deutsche Bank solely as derivative liability claims. So obviously if the claims against Home Loan Investment Bank are preempted, there's no liability imposed on Deutsche Bank. Even if the fraud claim had not been dismissed against Deutsche Bank on HOLA grounds, it would still properly be dismissed, as I mentioned earlier, on the Rule 9b grounds, and also because it just simply doesn't state a claim for fraud against Deutsche Bank. It might state a claim for fraud, and I don't think it does, against Home Loan Investment Bank, but it certainly doesn't state a claim for fraud against Deutsche Bank, which acquired the loan much later. Mr. Pomponio didn't talk about it, and you all didn't ask any questions. In this appeal, Ms. McCauley raised for the first time that somehow there was a retroactive application of the Dodd-Frank Act, which would preclude Home Loan Investment Bank from a line upon the HOLA preemption. The law in this circuit is fairly clear that issues not raised below will not be considered for the first time on appeal, but even if you were going to consider that particular issue, and we cited numerous cases in our brief that the Dodd-Frank Act was not retroactive, is not to be applied retroactively to the HOLA preemption. Obviously, the Dodd-Frank Act changed the HOLA preemption going forward, but not going backwards. I'm going to focus my comments on what I think the Court, from the questions that were asked, I believe it's most interested in. As I stated at the outset, and as this Court well is aware, Ms. McCauley only has two claims here, an unconscionability claim and a fraud claim, and for the most part, those two claims are based upon the same factual underpinnings. There's not really any difference. Though I would note that the fraud claim, if you read the First Amendment complaint carefully, the fraud claim really only relies upon the appraisal supposedly being inflated. It doesn't rely upon these other issues that were raised vis-a-vis the unconscionability or these allegations that were presented. You did not raise that issue in the preemption as to fraud claim in your motion to dismiss. No, but we did on the reply, and certainly as we pointed out in our brief. You didn't do it in the opening brief either. Yes, we did. In our brief for this Court? You brought it up in that instance. I'm sorry. Before the district court, when this was below. Did you bring this up? The preemption issue? Yes. As to the fraud claim. Yes. And as to the motion to dismiss? Not on our motion to dismiss, but on a reply we did. And certainly as we pointed out in our brief, Ms. McCauley had the opportunity to ask for a certain reply. Certainly, it wouldn't be anything that we disagreed with. You sort of touched on it in your reply brief. Pardon me? You touched on it a bit in your reply brief. Well, I think we stressed it. We went into it fairly extensively. I guess it just touched on it. But certainly the Court, and there are plenty of cases out there. I don't disagree with Mr. Pomponio that there's no circuit court that has ruled on the issue of whether a fraud claim is preempted under either subsection B or subsection C of the applicable regulation. But there are plenty of circuit courts that have ruled that breach of contract claims, fraud claims, and a variety of common law type claims are indeed preempted under this HOLA regulation. But doesn't it require the analysis as to whether it's expressly preempted or only incidentally preempted? With the fraud claim, because you're talking about state laws that regulate general commercial transactions, are a little different from claims that actually deal with interest rates, loan to value ratios, and things of that sort. But again, remember, the fraud claim, the factual underpinnings of the fraud claim, is only that the appraisal was supposedly inflated and that Home Loan Investment Bank misrepresented to Ms. McCauley that there was this appraisal and that they knew that the value wasn't what it really was. That's a pretty significant... Yes, but I just want to make sure that you're not thinking about the supposedly exploding arm as they characterized in the First Amendment complaint and in their pleadings, or the loan closing supposedly being rushed and the terms and conditions of the loan not being orally explained or verbally explained to Ms. McCauley in the other matters. So the processing and servicing of loans is a little different. This is only about origination. This is only about the origination of the loan. It doesn't have anything to do with any servicing aspects of the loan in the First Amendment complaint. What representation was made that she was justified in relying on? None that I know of. That's our position. If you look carefully, you have to look carefully at the First Amendment complaint, and I think that's what Judge Bailey did. I think you look carefully at the First Amendment complaint. There was no misrepresentation made to her. She just assumed because they were willing to make her a loan for $51,000 that they had an appraisal that was for more than that $51,000. She doesn't allege that they ever actually told her what the appraised value of the property was. She just made an assumption that because Home Loan Investment Bank was willing to make her a loan for $51,000 that there was an appraisal that valued her property at at least $51,000 or more. Well, that fact may be strengthened by the fact that the bank made her consolidate other loans in getting that $51,000 loan. Well, her allegations are that the bank made her consolidate other loans. That's why she came to Home Loan Investment Bank for the loan. The other thing is—I'm not sure it's in the facts, or even the allegations. Maybe I shouldn't say this. She had a land sales contract to purchase this property. She was basically converting an obligation under a land sales contract to a mortgage loan, and she was consolidating some other debts at the same time. That's really what happened here. I think the court—more than one of you have said and noted that the preemption here is full-field preemption. This isn't like the National Bank Act preemption. It's a different type of preemption. It's full-field preemption. It requires a court, including this court, to have a presumption of preemption as opposed to a presumption against preemption. Moreover, many courts have found that courts are to resolve any doubt. When you say full-field, are you referring to complete preemption? No, it's not express preemption. There's three categories of preemption. Express preemption would have to be a congressional enactment, but there is field preemption, which is applicable here by the statute and by, more particularly, the regulation, in fact. I don't know of any court that hasn't recognized that it's full-field preemption is applicable with regards to the whole of preemption. Again, I wanted to highlight that that's different than, for example, National Bank preemption. I think this court recognized that in a case it decided back in April of last year, the Epps case. It was just noted in sort of passing, but the court noted that the National Bank Act preemption and the OTS preemption were different types of preemption, that the OTS preemption was broader a preemption, that it does indeed require the application of a presumption in favor of preemption as opposed to a presumption against preemption. It further requires courts to resolve any doubt about the preemption in favor of it. In this case, the district court, if you look at the opinion, carefully went through the allegations in the complaint. First, as to the unconscionability claim, and then later as to the fraud claim. The court, in each instance, it took the four things that were basically alleged to support the unconscionability claim and the one thing that was alleged to support the fraud claim, and it found that there was a preemption under subsection B, a specific preemption under subsection B for each one of those. Alternatively, the district court found that even if there wasn't preemption under subsection B, and the court made it clear in each instance this was as an alternative, that there was preemption under subsections C because everything that was claimed, all the allegations that were made related to the loan and to the transaction, the loan transaction, the origination of the mortgage loan, and you couldn't separate these out is basically what the district court said. I'll just quickly go through what the court did with regards on the unconscionability claim. Again, it looked at the fact that there was this allegation that the loan was supposedly closed in a hurried manner and without adequate explanation of the terms of the mortgage loan. It looked at the allegation that Ms. McCauley believed that the real property securing her mortgage loan was worth more than $51,000, or $51,000 or more because the amount of the loan was $51,000. The district court looked at the allegation with regards to the mortgage loan containing what Ms. McCauley characterizes as a, quote, exploding, close quote, arm where the interest could go up but not down. The fourth thing that the court looked at below was that the mortgage loan supposedly exceeded the market value of her real property, or that there was an allegation to that effect. It seems like you are essentially arguing everything is preempted. What is the role of this subsection C, the savings clause? First of all, the regulation itself and every case that I have seen that has looked at that aspect of the regulation have determined that you start with subsection B. There are 13 enumerated items in there. It's got a whole bunch of things under C that says tort law. But if you determine under subsection B that the preemption applies, then the analysis stops there. The regulation itself says that, and the case law interpreting that regulation have all adopted that. And you think that's true when you make an allegation of fraud? Yes, I do, because I think that with the allegation of fraud, again, remember that in this particular instance the allegation of fraud is with regards to the supposedly the market value of real property exceeding the amount of the mortgage loan. And there is a specific part of subsection B that talks about loan to value ratio. Obviously, if you're taking into account the amount of the loan and the value of the property, what's that go to? It goes to loan to value ratio. The district court properly determined that a claim that has as its basis effectively what is the loan to value ratio. You know, it seems to me if you follow that line of connectedness, any time you bring an action against a bank or anything like that, you can say that. I mean, the reason we're here is because this bank lent me some money and because of that. And yet the OTS has made quite clear that, and let me look at the language. It says here, it's recognized that federal thrifts are presumed to interact with their borrowers in a truthful manner. And thus a general prohibition on deception should have no reasonable impact on their lending operations. I would agree with that. So when you bring a claim of fraud, if it's concerning truthfulness and the manner in which the institution has acted, then it would seem that the general prohibition as it says on deception has no measurable impact on the lending operations. As the OTS says. Well, but that's with regards to the application of subsection C, as it's referring to there. Again, the OTS has clearly said, and every court that I'm aware of that's looked at that part of the regulation, is that if you look at subsection B first, you look at the 13 items listed in subsection B, and if as a result of that analysis, as a result of that evaluation, the determination is made that the state law in question is going to impact on the ability of the Federal Savings Bank to do what it normally does vis-a-vis loan-to-value ratios, then that's preempted. And that's what the- That's any fraud. Doesn't matter then. Well, no. It's just- No, it's this particular- This particular, quote, fraud, close quote, that's alleged, is that you went out and got an appraisal, and the value that was more than it should have- You deceived us by selling us this, by giving us this loan. But it's all based upon the loan-to-value ratio. There wouldn't be- It's deception. There wouldn't be any- It's the kind of deception the OTS was talking about that you were supposed to be doing was truthful. And you're not going to get any extra points if you go do something untruthful. As we pointed out in our brief, there's- This is not a question of, well, you kind of didn't give me the right grade, or you didn't do-you made a mistake. This is pure untruthfulness, intentional fraud, in which you've done this. And the OTS has said you are, as institutions, supposed to be truthful. So if you do something that's deceptive, that's not having anything to do with your lending operations. The allegation is that there's a misrepresentation. But the allegation-again, you have to look carefully at the First Amendment complaint, which is what Judge Bailey did. He looked carefully at the First Amendment complaint, and he realized, after looking at the totality of the First Amendment complaint, the allegations with regards to this appraisal issue, and the claims with regards to this appraisal issue, and he determined that basically what we were getting to here was a loan-to-value ratio issue. What fraud claim would survive preemption? Can you give me an example? I think a fraud claim where you represented to the borrower that the particular rate for a loan- I think Judge Posner says something to this effect in the Ockwin case, the Seventh Circuit case- that if you make a loan to a borrower and you say the interest rate is going to be 10 percent, and then later you charge them-and that's actually what's in the documents is 10 percent, but then you're charging them 11 percent on the loan, that that could arguably be a fraud. I think that's what Judge Posner said. I don't think that every fraud claim is necessarily preempted by HOLA, but I think as the regulation itself contemplates, as the courts have said- Let's say her allegation is that you lied to me to sink me into a mortgage that I can't afford. Okay. That's her fraud allegation. That's the extent of it? I would say, first of all, if that's the extent of the allegation, that it should be dismissed based upon Rule 9b. Rule 9b, let's deal with preemption right now. Okay, but I'm just saying, first of all- If the basis of the fraud is that you lied to me, and you can add the particularity into it to bring you- Sure, I understand. The fact that you got an appraisal and do all that in Satisfy 9b, and you did it for the simple purpose to get me to get a mortgage you knew I could not afford. Isn't that her allegation? No, I don't believe that is her allegation. Her allegation is that I effectively assumed that the value that had been placed on the home vis-à-vis an appraisal that was obtained by Homeland Investment Bank was at least $51,000 because they were willing to make me a loan for $51,000. I'm not sure the fraud arises from an assumption. I agree with that. The conduct unquestionably indicates that the institution, in this instance, deliberately inflated the value of this house to give her a mortgage. The end result of that mortgage was she couldn't afford it, and they knew her credit worthiness when they loaned it to her. These are her allegations. I'm not saying you could prove it up in court or whatever. This is an example, or are you saying this is her allegations? It seems to be her allegations. I respectfully disagree, Your Honor. I think if you look carefully— Even if you look at it from the context you're describing and you look at basically what's going on here, if you're looking to try to—that does seem to fit within the description of how she's posing this. I assume that this was valued at what you said it was, and therefore I went in. It seems to me to be the same as saying you lied to me and telling me this was a mortgage, that this mortgage, this house was worth this in order to get me to get a mortgage that basically you knew I couldn't afford. Well, again, I just have to disagree with that. If you look carefully at her complaint, I think I have to give plaintiff's counsel credit because the fact of the matter is Home Loan Investment Bank never told her anything about the appraised value of this property. So they were careful when they crafted the complaint to not specifically say that somebody— which they should do under Rule 9b if they're going to be making a fraud claim— that some particular person at some particular time at some particular place told her something specific. And she can't be unknowingly defrauded. Well, but she— They couldn't have defrauded her and— Why can't she at least say in her complaint who told her that? Why can't she say in her complaint when she was told that and how was she told that? Why can't she say in her complaint exactly what she was told? Don't we have the basic information that the house was valued at $51,000, in fact, that it was— No, I don't know. No, I disagree, Your Honor, with your characterization. That's what the complaint says. The complaint says effectively that she assumed that the value of the property was at least $51,000 or more because they were willing to give me a loan for $51,000. She just— She has not said— $51,000 up. She has not said in the complaint— That didn't come from anywhere. That $51,000 didn't come from anywhere. Well, Your Honor, let me add one other thing because I want to get— I want to know that. You just said she assumed it. She had no basis to assume that. Well, I agree with that. I agree. That's why I think that— That's correct. That's exactly correct. So, in fact, you didn't have an appraiser for $51,000 or more. That's exactly correct. In excess of the house. No, I didn't say—you said do we have one for $51,000. No. You didn't have an appraiser in excess of the actual value of the house. Yes, that's correct. The actual value of the house? No. Or the value that would have justified the loan at the same time. No. We did not. So the loan you gave was correct under the law— And we relied upon the appraisal that was provided to us by a licensed independent appraiser in West Virginia. I mean, that's, you know—so, you know, if the appraisal was false, as Ms. McCauley's claiming, then I think maybe—I disagree with this, but I'll just say this— I think that maybe both Ms. McCauley and Homeland Investment Bank were defrauded. Thank you. Okay. Do I need to say anything more? Because, again, there wasn't any discussion about it. You may need to, but you're out of time. Okay. I'm over time. I am sorry. I am sorry. I didn't read green to red right. You better be careful driving home. Thank you. Thank you. I'd like to begin with the last discussion here. I think you need to, because if there's an appraisal— That's—it's not true. It's not—it's certainly not in the record. The allegations in the complaint in the district court specifically— She just assumed it. She did not—there's no allegation— I have. I just heard it that she just assumed it. Where is— The allegation in the joint appendix, page number 100, paragraph 14, that the plaintiff believed, based on representations from Ocean Bank, that her home had been valued in excess of $51,000. They went out. They obtained an appraisal for $60,000, called her up and said your home is worth more than $51,000. That's what we're getting in the loan. Did the bank get the appraisal? Yes, sir. She didn't get it. No, sir. And they called her and told her her home was valued in excess of $51,000. Did the bank pick the appraiser out? Who picked that— The bank picked the appraiser out. In fact, the allegations are that they intentionally employed that appraiser to give a false appraisal. The facts of the case, which shouldn't be really discussed here, are that there's an application filled out by the bank that says that the house is worth $60,000, even though property tax receipts show that it was assessed at a value of $32,000. They put an application a month before the appraisal came out, $60,000. The appraisal comes back to the dollar, $60,000. That goes back to my earlier question, justifiable or not? Your Honor, that's alleged as well in the complaint. It says that she reasonably believed that the value of her house was what Ocean Bank told her. They told her they went out and got an appraisal and that this was the value of it. Under the pleading standards at this motion to dismiss, there are allegations that she reasonably believed, specifically saying that, reasonably believed that the statement that her house was in excess of $51,000. If you look at the Twombly standard, I think it's reasonable and plausible that she would believe the bank when they told her that this is what her house was worth, that that's what it was worth. This business about she just assumed it and there was no allegation of misrepresentation is not consistent with the pleading, and it's not consistent with the district court who stated in the facts that Ms. McCauley had alleged that. When the home loan investment was asked about what can be a fraud and not preempted, the example they gave that they lied about the interest rate, that's terms. That's loan terms. So under their analysis in this case and the district court below, that type of fraud would even be preempted. There is nothing. It covers everything. Any type of deception, and this is what the courts have noted, any type of deception is going to have to do something with the loan term, or else why would you even be suing the loan company? And when the OTS says that they are required to deal honestly and any general prohibition on deception that requires a bank to do business honestly does not more than incidentally affect their lending. What I heard was that that only applies to subsection C as a savings clause, but this thing in the view of the other side does not survive subsection D. That's because they're using an overly inclusive scope of preemption principle. The OTS has looked at if you have a deception on any loan term, home loan investment would say, well, that's preempted. So home loan investment would say a savings association or a thrift may lie to its borrowers, and there's no recourse for that because it's preempted. There's no right of action under HOLA that a borrower can bring. There's no matters of dispute that OTS, which doesn't even exist anymore. There's no complaint dispute resolution process through OTS. So what they're saying is you're not allowed to bring those claims at all, and there's no recourse for lying. I just want to say and conclude that there has been no federal circuit court, of course no Supreme Court opinion that has found a state common law of general applicability to be preempted by HOLA. This court, if they would conclude that the fraud claim or the unconscionability claim were preempted, would be the first to do so in the country. And we'd be relying upon a district court opinion that has already reversed its own preemption analysis under the NBA as misguided. Well, the fact that we would be the first doesn't necessarily make it wrong. No, Your Honor, it doesn't. But I would submit in this case it would be. Thank you. Thank you.
judges: Allyson K. Duncan, James A. Wynn, Jr., Henry F. Floyd